UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JATINDER SINGH,<br><br>                Petitioner,<br>    v.<br><br>KRISTI NOEM et al.,<br><br>                Respondents. | CASE NO. 2:26-cv-00079-DGE<br><br>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS (DKT. NO. 1) |

Before the Court is Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) For the reasons discussed herein, the petition is GRANTED.

## I.    BACKGROUND

**A. Factual Background**

Petitioner is a native and citizen of India. (Dkt. No. 9-1 at 2.) Petitioner entered the United States on May 19, 2022. (*Id*.) On May 22, 2022, DHS placed Petitioner "[i]n removal proceedings under section 240 of the Immigration and Nationality Act" alleging he was subject to removal pursuant to "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended."

(*Id*.)  Petitioner was issued a Notice to Appear before an immigration judge on June 16, 2022 in Eloy, Arizona. (*Id*.)  But on June 2, 2022, Petitioner was "released from service custody pending a final decision" in his hearing. (Dkt. No. 9-3 at 2.)  Petitioner was ordered released "[u]nder bond in the amount of $3,000.00" and "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." (*Id*. at 3.)[1]

Petitioner was then "advised to appear at the San Francisco Immigration Court" on January 24, 2022. (Dkt. No. 9-2 at 4.)  His "court date was continued and his next date to appear was set for" December 22, 2027. (*Id*.)  Petitioner then lived in the United States with no known incidents for almost four years.  On November 25, 2025, Petitioner "was charged with Physical Control [of a] Vehicle Under the Influence (Enhancing Factor DUI) by the Puyallup Police Department." (*Id*.)  Nothing in the record indicates the local court determined Petitioner should stay in custody.  His charge remains pending. (*Id*.)

Less than one month after Petitioner's Washington state charge, on December 10, 2025, Petitioner was driving a "commercial vehicle" near St. Regis, Montana along Interstate 90. (*Id*.)  The Montana Highway Patrol Criminal Interdiction Team and United States Border Patrol were conducting a joint operation "focused on identifying narcotics and human smuggling activities" in the area. (*Id*.)  Law enforcement officials "encountered" Petitioner and "interviewed" him. (Dkt. No. 8 at 2.)  Petitioner provided his Employment Authorization Document and was identified as "actively in removal proceedings on a non-detained docket." (Dkt. No. 9-2 at 4.)  Petitioner asserts the law enforcement official "told him that the work authorization document,

---

[1] Section 236 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1226.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS (DKT. NO. 1) - 2

and the Social Security Card were not sufficient to stop them from doing what they were going to do." (Dkt. No. 1 at 7.)

After interviewing Petitioner, law enforcement officers detained Petitioner. The officers identified that Petitioner "was previously released on his own recognizance with the obligation to comply with all conditions, including compliance with all laws on the local, state and federal level." (Dkt. No. 9-2 at 4.) The officers found that he had "violat[ed] state law" because of his Washington charge and determined Petitioner "is now considered a flight risk and is being processed as a T-Other (Custody Redetermination) case." (*Id*. at 4–5.) The officers told Petitioner that "his release is being revoked due to noncompliance with release conditions and court requirements," and informed him that he "will be held in DHS custody pending transfer to ICE ERO." (*Id*. at 5.)[2]

Petitioner was transferred to Northwest Immigration & Customs Enforcement ("ICE") Processing Center ("NWIPC") on December 12, 2025 and has been detained there since. (Dkt. No. 8 at 3.)

**B. Procedural Background**

Petitioner filed a petition for writ of habeas corpus on January 8, 2026. (Dkt. No. 1.) Petitioner asserts his detention violates the Due Process Clause of the Fifth Amendment. (*Id*. at 20.) The Court denied Petitioner's motion for temporary restraining order and ordered the Parties to follow the Court's scheduling order (Dkt. No. 4). (Dkt. No. 5.)

---

[2] Petitioner was also issued a Notice of Violation and Order Under the Immigration and Nationality Act finding he had violated Section 275 because he "was apprehended while entering (or attempting to enter) the United States at a time or place other than as designated by immigration officers." (Dkt. No. 9-4 at 3.) Petitioner asserts this notice was "without legal authority." (Dkt No. 10 at 2.) Because its legality is outside the scope of this habeas petition, which is focused on the legality of Petitioner's detention, the Court does not consider this argument.

Pursuant to the Court's scheduling order, Respondents filed a response on January 23, 2026. (Dkt. No. 7.) Petitioner was re-detained, Respondents assert, when "DHS decided to revoke [his] release because Petitioner did not comply with his conditions for release, with noncompliance based on his pending charges for physical control of a vehicle under the influence and his determination as a flight risk by DHS." (*Id*. at 8.) Respondents assert two arguments for why this re-detention was proper. First, Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. §1225. (*Id*. at 3.) Second, Respondents assert Petitioner was released under 8 C.F.R. § 1236.1(c)(8) but permitted to be re-detained under 8 C.F.R. § 1236.1(c)(9). (*Id*. at 4.) Respondents also assert Petitioner's re-detention does not violate due process because "Petitioner knew what conditions he must abide by to continue on OREC [(Order of Release on Recognizance)] and then clearly did not comply." (*Id*. at 8.)

Petitioner filed a traverse on January 29, 2026. (Dkt. No. 10.) Petitioner's traverse was filed one day late. The Court will consider Petitioner's traverse, *see Federal Trade Commission v. Lunada Medical, Inc.*, No. CV-15-3380-MWF (PLA), 2015 WL 12911516, at *1 (C.D. Cal. Sept. 15, 2015) (permitting untimely replies when "warranted in the interests of justice"), but reminds counsel of their professional obligations to meet deadlines. Failure to file a timely traverse could have led the Court to find Petitioner failed to respond to Respondents' arguments or meet its burden, thereby resulting in an order dismissing the petition.

## II. ANALYSIS

A. **Legal Standard**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on her habeas petition, Petitioner "must show [she] is in custody in violation of the

1   Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV,

2   2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No.

3   C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).

4   Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that

5   he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance

6   of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn.

7   May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations

8   omitted)).

9       **B. Petitioner is not detained under 8 U.S.C. § 1225.**

10      At the outset, Respondents argue Petitioner is subject to mandatory detention under

11  expedited removal proceedings pursuant to 8 U.S.C. § 1225(b), and its implementing regulations,

12  8 C.F.R. § 235 *et seq*. (Dkt. No. 7 at 5–6.) § 1225 applies to "applicants for admission" to the

13  United States, who are defined as a noncitizen "present in the United States who has not been

14  admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for

15  admission fall into two categories, both of which are subject to mandatory detention.[3] *Jennings*

16  *v. Rodriguez*, 583 U.S. 281, 287 (2018). Individuals detained under § 1225 can only be paroled

17  into the United States "for urgent humanitarian reasons or significant public benefit." *Id.* at 300

18  (quoting 8 U.S.C. § 1182(d)(5)(A)). In contrast, 8 U.S.C. § 1226(a) is broader than its

19  counterpart and is the "default rule" for noncitizens present in the United States who are arrested

20  and placed in immigration detention. *Jennings*, 583 U.S. at 303. § 1226(a) permits the

21

---

[3] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS (DKT. NO. 1) - 5

government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

Here, the Court finds Respondents' argument that Petitioner is detained pursuant to § 1225 inconsistent with the factual record. First, the clear text of Petitioner's Notice of Custody Determination states he is being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." (Dkt. No. 9-3 at 3.)

Second, Petitioner's May 22, 2022 Notice to Appear identifies that he is a noncitizen "present in the United States who has not been admitted or paroled," not "an arriving alien." (Dkt. No. 9-1 at 2.) Notably, the issuing officer explicitly declined to designate Petitioner as an "arriving alien," (*see* Dkt. No. 10-1 at 2), which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation. 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez*, 792 F. Supp. 3d at 218 (concluding "arriving alien" language synonymous with § 1225).

Third, individuals subject to § 1225 can only be released for "urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300; 8 U.S.C. § 1182(d)(5)(A). Petitioner was released on bond with no finding the release was based on "urgent humanitarian reasons" or for "significant public benefit."

Fourth, Petitioner was released on "an order of recognizance" and a $3,000 bond. (Dkt. Nos. 8 at 2; 1-3.) An order of recognizance is issued when a detainee is released pursuant to § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent

that the INS used the phrase "release on recognizance" as another name for "conditional parole" under § 1226(a).").

Fifth, the Enforcement Removal Officer who provided information about Petitioner's history makes no mention that Petition was taken into custody or that he remains in custody based on § 1225. (*See* Dkt. No. 8.) Instead, the Enforcement Removal Officer identifies Petitioner was detained because Petitioner had violated the terms of his release by being charged with physical control of a vehicle while under the influence and because Petitioner is considered a flight risk. (*Id*. at 3.) These are the only two bases identified as the reason for Petitioner's current detention.

Accordingly, the Court finds Petitioner is not subject to, nor currently being detained pursuant to, 8 U.S.C. § 1225.

**C. Petitioner's re-detention violated due process.**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong*

*v. Manzo*, 380 U.S. 545, 552 (1965)).  *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest."  *Mathews*, 424 U.S. at 335.

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action."  *Id.*  Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment.  *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).  An individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention.  *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).  Here, Petitioner was arrested on May 22, 2022 but then released on June 2, 2022.  At that point, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025); *Makuey*, 2025 WL 3640900, at *4.

Accordingly, the first *Mathews* factor favors Petitioner.

2. <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of an erroneous deprivation *without any hearing* is high.

To justify Petitioner's detention, counsel for Respondents asserts Petitioner is subject to § 1225 without any support. Such position shows a clear erroneous basis for Petitioner's detention.

And importantly, courts in this district have previously held that the government violates due process when an individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing. *See Bello Chacon v. Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025).

Respondents argue Petitioner's detention was justified because he has been charged with a Washington state crime and "the risk of a constitutionally significant deprivation of Petitioner's liberty without a pre-detention hearing is minimal when Petitioner knew what conditions he must abide by to continue on OREC and then clearly did not comply." (Dkt. No. 7 at 8.) But Respondents do not support their argument with anything but conclusory statements. Respondents do not provide this Court with a copy of Petitioner's Order of Release. Nor do Respondents explain why a *pending* charge, where no final decision has been reached, is sufficient to constitute a lack of "compliance with all laws on the local, state and federal level." (Dkt. No. 9-2 at 4.) Respondents also do not explain why providing only an "informal

interview" for an individual alleged to have violated an order of release is sufficient process. (Dkt. No. 7 at 3.)

Respondents also argue that requiring Petitioner's release would be erroneously imposing the 8 C.F.R. § 1236.1(c)(8) requirements for release into 8 C.F.R. § 1236.1(c)(9) governing re-detention. (*Id*. at 7.) But the Court is not imposing the requirements of 8 C.F.R. § 1236.1(c)(8) into 8 C.F.R. § 1236.1(c)(9). Rather, the Court's focus is on the Due Process Clause of the Fifth Amendment and the absence of any process provided to Petitioner other than conclusory statements that Petitioner violated the terms of his release and he is now a flight risk. Here, the erroneous risk of deprivation is high where it is unclear whether Petitioner violated any term of an order of release and unclear why it can be concluded Petitioner is now a flight risk. A pre-deprivation hearing is necessary to address the erroneous risk of deprivation.

Accordingly, the second *Mathews* factor favors Petitioner.

3. <u>Government's interest</u>

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient. And although "there

may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude Petitioner's circumstances presented such an urgent scenario.[4]  Again, all that is provided are conclusory statements that Petitioner violated the terms of his release and that he is now a flight risk.  These conclusory statements are insufficient to find the government's potential interest in detaining Petitioner without process outweighs Petitioner's liberty interest.

In sum, all three *Mathews* factors favor Petitioner.  Respondents' detention of Petitioner violates the due process protections afforded to him by the Constitution.  Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

### III.   ORDER

Accordingly, Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED.  Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within ONE day of this order and return him to the conditions of release identified his June 2, 2022 Order of Release.

Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.  To be clear, the record presented in this matter did not establish urgent circumstances nor a clear legal basis justifying detention.

---

[4] Nor is there any evidence in the record Respondents have provided Petitioner any post-deprivation hearing.

Within **TWENTY-FOUR (24)** hours of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

Lastly, Petitioner seeks an award of attorney fees. (*See* Dkt. No. 1 at 13.) Petitioner is GRANTED leave to file a motion for attorney fees. The motion for fees shall identify the legal authority supporting an award of fees and shall be filed **no later than February 17, 2026**. If no motion is filed by such date, this matter will be closed.

The Clerk is directed to calendar this event.

Dated this 2nd day of February, 2026.

David G. Estudillo
United States District Judge